<u>**Not for Publication**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JIDEOFOR MICHAEL ONUEKWUSI, <br>         *Plaintiff,* <br><br> v. <br><br> DARNELL GRAHAM, CHRISTOPHER BROWN, MARIA MITTI, JOSEPH COZENTINO, MIGUEL ARROYO, and CITY OF NEWARK <br>         *Defendants,* | Civil Action No. 20-cv-02965 <br><br> <u>**OPINION**</u> |

<u>**John Michael Vazquez, U.S.D.J.**</u>

        This matter arises out of Plaintiff's 42 U.S.C. § 1983 claims against Defendants, members of the Newark Police Department ("NPD"), and the City of Newark. Defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court reviewed the parties' submissions[1] in support and in opposition and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion is granted in part and denied in part.

## I.    BACKGROUND

### A.  The Individual Defendants

        Plaintiff filed his Complaint on March 18, 2020. *See* D.E. 1 ("Compl."). Generally, Plaintiff alleges that Defendants conspired to frame him for three armed robberies that occurred between August 14-16, 2018, at 176 Weequahic Avenue in Newark, New Jersey. *See id.* ¶ 18-24.

---

[1] Defendants' motion to dismiss, D.E. 10 ("Br."); Plaintiff's opposition, D.E. 13 ("Opp."). Defendants did not file a reply.

All three robbery victims intended to meet with an unknown seller at 176 Weequahic Avenue to purchase an iPhone. *Id.* Two victims contacted the seller via craigslist and communicated with the seller at the cell phone number 908-382-4172. *Id.* ¶¶ 18, 23. One of the craigslist victims also reported the cell number 908-416-2052 was associated with the seller. *Id.* ¶ 24. A third victim only communicated with the seller via the mobile app "OfferUp." *Id.* ¶ 21. Upon arrival at 176 Weequahic Avenue, each victim was robbed at gunpoint. *Id.* ¶¶ 20, 21, 23.

All three victims similarly described the assailant. The first victim described the offender as "a black man, approximately 25 years old, approximately 5'10'' and medium build with black hair and a beard." *Id.* ¶ 19. The second victim described the assailant as a "black male, approximately 5'9-5'10'' and a medium build." *Id.* ¶ 22. The third victim described the assailant as a "black male in his mid-late 20s, slim/med build with a beard." *Id.* ¶ 23. The first and second victim did not describe the victim as having an accent. *Id.* ¶¶ 20, 22.

Plaintiff alleges that Defendants knew "with virtual certainty that the same person was responsible for all three robberies," *id.* ¶ 25, and decided to frame Plaintiff for the robberies. *Id.* ¶ 26. However, Plaintiff alleges that Defendants had no factual basis to believe that Plaintiff had anything to do with the robberies. *Id.* ¶ 28. In contrast to the suspect described by the victims, Plaintiff claims that at the time of the robberies he was 36 years old, 6'1", 254 pounds, and speaking with a "distinct Nigerian accent." *Id.* ¶ 27. Plaintiff further alleges that he "was not associated in any way with the phone numbers the offender used to communicate" with two of the victims – 908-382-4172 and 908-416-2052 – and that Plaintiff "maintained no accounts with Craigslist or Offerup." *Id.* ¶ 27. Plaintiff claims that Defendants knew this. *Id.* ¶ 28.

Plaintiff claims Defendant framed him by inducing false witness identifications through misleading and suggestive photo arrays. Specifically, Plaintiff alleges that, on August 30, 2018,

Defendants Graham and Mitti arranged for the third victim to view a photo array. *Id.* ¶ 29. Plaintiff states that Graham and Mitti included in the array a 2004 photograph of Plaintiff that depicted him as 70 pounds lighter and 15 years younger than at the time of the robberies. *Id.* Plaintiff alleges that at the time of the array, he did not resemble the 2004 photograph and that Graham and Mitti knew this but did not tell the victim. *Id.* Plaintiff further alleges that Graham and Mitti falsely told the victim that Plaintiff was associated with the phone number used by the offender. *Id.* ¶ 30. Plaintiff claims that Graham and Mitti showed the victim the old photograph of Plaintiff and told the victim that Plaintiff was associated with the assailant's phone number with "the goal of inducing a false identification of Plaintiff by the victim." *Id.* ¶¶ 29-30. The third victim ultimately identified Plaintiff as the perpetrator of the robbery. *Id.* ¶ 30.

On September 6, 2018, Defendants arrested Plaintiff. *Id.* ¶ 32. Plaintiff alleges that Defendants did so without probable cause and that, after the arrest, "Defendants certainly were aware that Plaintiff spoke with a distinct Nigerian accent" and that "[n]o victim had described the offender as having any type of accent." *Id.* Additional photo arrays followed. On September 9 and 10, 2018, Defendants Brown and Graham showed a photo array containing the same 2004 photo of Plaintiff to the first and second victims. *Id.* ¶ 32. Plaintiff states that Brown and Graham knew the 2004 photo did not resemble Plaintiff at that time but did not tell the victims that and did not tell the victims that Plaintiff spoke with a distinct Nigerian accent. *Id.* Brown and Graham also told both victims that Plaintiff was associated with the phone number used by the perpetrator. *Id.* ¶ 33. Plaintiff alleges Brown and Graham did these things to induce false identifications of Plaintiff from the victims. *Id.* ¶ 33. The second victim identified Plaintiff but the first victim "failed to make a positive identification." *Id.*

Plaintiff alleges that Graham then "made false statements in his police reports and probable cause affidavits claiming that a phone number associated with the offender was registered to Plaintiff." *Id*. ¶ 34. Graham also told this alleged falsehood to a grand jury and informed the grand jury that two victims had identified Plaintiff as the offender "without mentioning the highly suggestive and misleading photo array designed to induce a false identification of Plaintiff." *Id*. However, Plaintiff alleges that Graham "knew with certainty that Plaintiff's phone number was not and could not be linked to the offender in any way." *Id*. ¶ 35. Graham also did not tell the grand jury that Offerup and Craigslist confirmed that Plaintiff did not maintain an account with those platforms. *Id*. Plaintiff alleges that Graham lied about the connection between Plaintiff and the perpetrator's phone number, while also concealing that Plaintiff did not maintain accounts on Offerup and Craigslist to "secure an indictment against Plaintiff." *Id*. Ultimately, the grand jury indicted Plaintiff "for three counts of first-degree robbery, two counts of second-degree unlawful possession of a firearm, and three counts of second-degree possession of a weapon with an unlawful purpose." *Id*. ¶ 36.

Plaintiff alleges that Defendants Arroyo and Cozentino "supervised, read, and approved" Graham's "detective reports that contained verifiable falsehoods." *Id*. ¶ 37. Plaintiff claims Arroyo and Cozentino "knew that Plaintiff could not be connected to any phone number associated with the offender and that the photo arrays were deceptive and misleading" and failed "to intervene to stop" Graham. *Id*. Specifically, Plaintiff alleges that Graham stated in his detective report that Plaintiff's name was "obtained from an Accurint check of the phone number associated with investigation." *Id*. ¶ 38. Plaintiff alleges that this statement was false and that "all Defendants knew the statement was false." *Id*. Plaintiff adds that Graham's statement in his detective report that Plaintiff "matches the description of the suspected [*sic*] involved in all three incidences" was

false, *id*. ¶ 38 (internal quotation marks omitted), and that all Defendants knew this was false. *Id*. Plaintiff points to the fact that all victims described the offender as "a black male in his mid-20s, 5'9" to 5'10" and slim/medium build" whereas Plaintiff, at the time of robberies, was 37 years old, 6'1" and 254 lbs. *Id*. ¶ 39.   Moreover, Plaintiff claims he had a verifiable alibi during the first robbery: "he was captured on video doing laundry at a laundry mat with his girlfriend at the time of the robbery." *Id*. ¶ 41.   Plaintiff alleges that because "all three robberies were committed by the same person," he "had affirmative evidence that he was not involved in any of the robberies." *Id*.

Plaintiff indicates that, on May 6, 2019, a New Jersey Superior Court judge dismissed all charges against him based on a finding that Graham "had misrepresented the evidence when he testified before the grand jury that a phone number associated with the offender was registered to Plaintiff." *Id*. ¶ 42.   Due to an "immigration hold stemming from the false charges brought against Plaintiff," he was not released until August 2019. *Id*.   ¶ 43.   Plaintiff states that he was detained without probable cause for 11 months. *Id*. ¶ 44.

### B.   The City of Newark

Plaintiff claims that, at the time of Plaintiff's arrest, Defendant City of Newark "had a well-documented pattern and practice of condoning Fourth Amendment violations of civilians by its officers, including conduct that resulted in false arrests and malicious prosecutions of innocent people." *Id*. ¶ 83.   Plaintiff states this pattern had not been corrected at the time of his arrest in August 2018. *Id*.   Specifically, Plaintiff alleges that, in May 2011, the United States Department of Justice ("DOJ") opened an investigation into the Newark Police Department "after receiving hundreds of complaints alleging serious allegations of civils rights violations, including allegations of false arrest, malicious prosecution, and other Fourth Amendment violations." *Id*. ¶ 84.   In July 2014, DOJ concluded that "Newark Police Department routinely violated the Fourth Amendment

by stopping and arresting individuals absent probable cause" and that the department's internal systems designed to prevent and detect misconduct were deficient. *Id*. ¶ 85. DOJ, NPD, and the City of Newark entered into a consent decree, intending to correct these issues. *Id*. ¶ 86. Yet Plaintiff alleges that as of August 2018 – the time of Plaintiff's arrest – "Newark Police Department had not implemented or trained its officers in connection with any new policies and practices related to addressing the department's pattern and practice of arresting individuals in violation of the Fourth Amendment." *Id*. ¶ 87. Plaintiff claims that his arrest and prosecution were part of "a larger pattern and practice of Newark police personnel that routinely arrest and charge civilians with criminal offenses despite the absence of probable cause." *Id*. ¶ 89. In support, Plaintiff points to other cases filed in this district alleging false arrest and malicious prosecution claims that are either currently pending or that have settled. *Id*. ¶¶ 90-95. As a result, Plaintiff alleges that NPD maintains "policies, practices, or customs" of

> (1) arresting and charging innocent individuals for crimes absent probable cause; (2) fabricating/manufacturing evidence to justify false charges against innocent people; (3) rigging photo arrays and manipulating witnesses to obtain false identification; and (4) suppressing or concealing exculpatory or impeaching evidence that would demonstrate that charged individuals are actually innocent of the charged offenses.

*Id*. ¶ 96. Plaintiff further claims that Newark is liable for the conduct of the Defendant police officers because Newark, through its conduct, condoned these policies and failed to train Newark Police Detectives appropriately. *Id*. ¶¶ 97-114.

### C. Procedural History

Plaintiff filed his Complaint on March 18, 2020. D.E. 1. Plaintiff's Complaint asserts six counts: (1) a claim for unlawful search and seizure under the Fourth Amendment pursuant to 42 U.S.C. §1983 (Count One); (2) a claim for malicious prosecution and prolonged pre-trial detention

under the Fourth Amendment pursuant to 42 U.S.C. § 1983 (Count Two); (3) a "*Brady*/Fabricated Evidence Claim" under the Due Process Clause pursuant to 42 U.S.C. § 1983 (Count Three); (4) a failure to intervene claim pursuant to 42 U.S.C. § 1983 (Count Four); (5) a conspiracy claim pursuant to 42 U.S.C. § 1983 (Count Five); and (6) a "*Monell* Claim" pursuant to 42 U.S.C. § 1983 (Count Six).  Defendants responded with the current motion to dismiss.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]"  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth.  *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true."  *Fowler*, 578 F.3d at 210.  Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action."  *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015)**.**

### III.    ANALYSIS

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983 which, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

§ 1983 does not provide substantive rights; rather, § 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state a claim under § 1983, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

### A.  Defendants' Motion to Dismiss Count Three

Defendant first attacks Count Three, which alleges a "*Brady*/Fabricated Evidence Claim" under the Due Process Clause. Defendant relies heavily on documents from Plaintiff's now-dismissed criminal case, which are annexed as exhibits to the motion to dismiss. *See id*. at 26-27. First, Defendants argue the Court must disregard Plaintiff's allegation that Defendants' falsely linked him to a cell phone number that was not his, because, Defendants' claim, "Plaintiff by his own admission conceded to the Superior Court that he was, in-fact, actually connected to the telephone number utilized in the robberies through a family member." *Id*. at 26. Next Defendants argue that "[u]sing an outdated photo is not fabrication in any reasonable meaning of that term" and that "Plaintiff fails to plead any plausible factual allegations that indicate Graham, Mitti and Brown were actually aware his photo was inaccurate." *Id*. at 27. Plaintiff counters that, at this

stage, the Court must accept his allegation that he "had no connection whatsoever to phone number 908-416-2052" as true.  Opp. at 8.  Plaintiff states that although the Court may take judicial notice of the existence of the documents from Plaintiff's criminal proceedings, the Court "may not go so far as to take judicial notice of the truth of the facts set forth in the transcripts."  Opp. at 4 (citing *Easterling v. Perez*, No. CV 16-4463 (JMV), 2017 WL 3610484, at *4 (D.N.J. Aug. 22, 2017); *Anderson v. Dauphin Cty. Adult Prob. Office*, No. 1:15-CV-00878, 2016 WL 769278, at *7 (M.D. Pa. Jan. 25, 2016), *report and recommendation adopted*, No. 1:15-CV-878, 2016 WL 759162 (M.D. Pa. Feb. 26, 2016)).  Plaintiff continues that even if the Court were to take judicial notice of the truth of the facts in Defendants' exhibits, that "Defendants' own supporting documents show that Plaintiff was not linked to th[e] phone number[.]"[2]  Opp. at 8.  Finally, Plaintiff argues that he has alleged sufficient facts to support a plausible inference that the witness identifications constituted fabricated evidence.  *Id*. at 10-12.

The issue is whether the Court may consider Plaintiffs' then criminal defense counsel's statements in the underlying proceedings to resolve Defendants' motion to dismiss.  The Third Circuit allows courts to consider matters of public record when ruling on a motion to dismiss.  *In re Rockefeller Center Properties, Inc. Sec. Litig.*, 184 F.3d 280, 292–93 (3d Cir. 1999).  Judicial proceedings are public records of which courts may take judicial notice.  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  In criminal cases, matters of public record have been limited to criminal case dispositions (such as convictions or mistrials), letter decisions of government agencies, and published reports of administrative bodies.  *Id.* at 293 (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Southern Cross Overseas*

---

[2]  Alternatively, Plaintiff contends that if the Court is inclined to the consider the truth of Defendants' exhibits that the Court must convert Defendants' motion to one for summary judgment and permit discovery.  Opp. at 9.

*Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (taking judicial notice of bankruptcy court opinion).

"[J]udicial noticing the existence of a published opinion is proper to resolve a 12(b)(6) motion." *Southern Cross*, 181 F.3d at 427, n.7. Yet, the Third Circuit has found that when "a court . . . examines a transcript of a prior proceeding to find facts [it] converts a motion to dismiss into a motion for summary judgment." *Id.* (citing *Kauffman v. Moss*, 420 F.2d 1270, 1274–75 (3d Cir. 1970)). Thus, there is a distinction between "judicially noticing the existence of prior proceedings and judicially noticing the truth of facts averred in those proceedings." *Id.* (citing 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5106, at 247 (1999 Supp.)); *see also Colonial Leasing Co., Inc. v. Logistics Control Group Int'l*, 762 F.2d 454, 459 (5th Cir.1985). Additionally, where an affidavit is filed in opposition to a pending motion to dismiss, it is clearly a matter outside the pleading "which, if not excluded by the court, require[s] the court to convert the pending motions to dismiss into motions for summary judgment." *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989).

In short, while this Court may take judicial notice of public records from Plaintiff's criminal proceedings in deciding this Rule 12(b)(6) motion to dismiss, the Court may not go so far as to take judicial notice of the truth of the facts set forth in the records. *See Southern Cross*, 181 F.3d at 427, n.7. As a result, the Court cannot consider any factual statements made by counsel during the state court hearings. *See Southern Cross*, 181 F.3d at 427, n.7. The Court does not consider, at this stage, Defendants' argument as to Plaintiff's former criminal defense counsel's alleged admission that a phone number used by the alleged robber was associated with Plaintiff.

The question remains whether Plaintiff adequately pleads that Defendants' alleged false testimony, linking the robber's phone number to Plaintiff, constitutes fabricated evidenced. To

10

plead a claim for fabrication of evidence, a plaintiff must demonstrate that there was "a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Black v. Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016), *as amended* (Sept. 16, 2016); *see also Zisa v. Haviland*, No. CV 17-5551, 2020 WL 1527862, at *12 (D.N.J. Mar. 31, 2020) ("To plead a claim for fabrication of evidence, a plaintiff must demonstrate that there was a 'reasonable likelihood that, without the use of that [fabricated] evidence, the defendant would not have been convicted.'" (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014)). "However, testimony that is incorrect or disputed cannot necessarily support a claim for fabrication of evidence. Rather, there must be 'persuasive evidence supporting a conclusion that the proponents of the evidence were aware that the identification was incorrect, and thus, in effect, offered the evidence in bad faith.'" *Zisa*, No. CV 17-5551, 2020 WL 1527862, at *12 (quoting *Halsey v. Pfeiffer*, 750 F.3d at 295)).

Defendants claim Graham's testimony was correct. However, this factual assertion is directly contrary to the well-pleaded allegations in the Complaint, Compl. ¶¶ 30, 33-35, which the Court accepts as true in deciding the current motion. The Court finds that Plaintiff has adequately pled facts giving rise to a reasonable inference that there was "a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Black*, 835 F.3d at 371.

Plaintiff also asserts that "Defendants fabricated evidence against Plaintiff, consisting of . . . false identifications of victims through the use of deceptive and highly suggestive photo arrays." *Id*. ¶ 64. Defendants argue that "[u]sing an outdated photo is not a fabrication in any reasonable meaning of that term, the picture was in fact Plaintiff, just a younger version of Plaintiff." *Id*. at 26-27. Besides ignoring Plaintiff's allegations that Graham, Brown, and Mitti told the victims

11

during the photo arrays that the offender's phone number was associated with Plaintiff, Compl. ¶¶

30, 33, Defendants do not cite any authority for the proposition that showing an outdated and

materially different photograph cannot support a claim for fabricated evidence.  While true that

the photograph may be an accurate depiction of Plaintiff at an earlier point in his life, the objective

of a photo array is to determine whether a victim or witness can identify a suspect.  To this end,

using an old photograph that no longer reflects a person's physical features (as Plaintiff alleges

here as to both age and weight) results in fabricated evidence, that is, a knowingly faulty

identification.

Contrary to Defendants' assertions, other courts have found that a state actor's manufacture

of, and knowing reliance on, an unreliable identification can support a fabrication claim.  *See e.g.*,

*Bolden v. City of Chicago*, 293 F. Supp. 3d 772, 780 (N.D. Ill. 2017).  In *Bolden*, the plaintiff

alleged the defendant officers engineered a faulty lineup by walking the victim past the plaintiff

immediately before the lineup and by having one of the officers mention the plaintiff's name while

conducting the lineup.  *Id*.  The *Boldin* court found these allegations sufficient to state a fabrication

of evidence claim.  *Id*.  Accordingly, the Court declines to accept Defendants' categorical rule that

a manufactured false identification cannot serve as the basis for a fabrication of evidence claim.

Defendants next argue that Plaintiff fails to plead any plausible factual allegations that

indicate Graham, Mitti and Brown were actually aware his photo was inaccurate.  Here, Plaintiff

alleges the Defendants used a 15-year-old photo of him and told the victims that Plaintiff's phone

number was associated with their assailant.  Compl. ¶¶ 29, 32.  Plaintiff further alleges that

Defendants' knew that the phone number was not associated with him and that they knew the

photograph did not resemble him.  *Id*.  ¶ 28.  Based on these allegations, the Court can reasonably

infer that Defendants knew a 15-year-old photo of Plaintiff was inaccurate.  *See, e.g.*, Bolden, 293

F. Supp. 3d at 780.   The Court concludes that Plaintiff's allegations as to the Defendants' manufacture of the false identification of Plaintiff gives rise to a reasonable inference that there was "a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Black*, 835 F.3d at 371.  Aside from Defendants' alleged false testimony that Plaintiff was connected to the assailant's phone number, the only other evidence supporting probable cause is the false identifications – which Plaintiff adequately alleges were fabricated, Compl. ¶¶ 29, 32, and Defendants' indication to the victims that their assailant's phone number was connected to Plaintiff, *id*. ¶¶ 30, 33.   Defendants' motion to dismiss Count Three is denied.

### B.  Defendants' Motion to Dismiss Counts One and Two

Defendant attacks Counts One and Two, § 1983 claims arising under the Fourth Amendment, as to probable cause.  Br. at 28-34.  Lack of probable cause is an element of both of Plaintiff's claims under the Fourth Amendment.

To establish a Fourth Amendment malicious prosecution claim, a plaintiff must show the following:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Black v. Montgomery Cty.*, 835 F.3d 358, 364 (3d Cir. 2016), *as amended* (Sept. 16, 2016) (quoting *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)).

Similarly, "[a]n arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983."  *O'Connor v. City of Philadelphia*, 233 F. App'x 161, 164 (3d Cir. 2007) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).  "The proper inquiry in a Section 1983 claim based on false arrest . . . is not whether the person arrested in fact

13

committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634-35 (3d Cir. 1995) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).  "Where the police lack probable cause to make an arrest, the arrestee has a claim under [Section] 1983 for false imprisonment based on a detention pursuant to that arrest."  *Id.* at 636 (quoting *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988)).

Defendant argues that Plaintiff has not adequately pleaded that he was arrested and prosecuted without probable cause because the judges in the criminal case found that there was probable cause for arrest and detention.  *Id*. at 30.  Defendant adds that Plaintiff must be collaterally estopped from attempting to relitigate the issue of probable cause through his Complaint.  *Id*. at 32-33.  Plaintiff counters that the Court should not consider the truth of the documents attached to Defendants' motion to dismiss, Opp. at 13, and that, regardless, the Complaint adequately pleads that Defendants made numerous misrepresentations and material omissions to the grand jury and the state court judges to obtain the probable cause determinations that Defendants now rely on, *id*. at 14-17.

The Court does not find it necessary to delve into the law of preclusion because Plaintiff adequately alleges that the evidence related to Defendant's impropriety – as to the phone numbers connected with Plaintiff, informing victims of the numbers connected to Plaintiff, and showing the victims an outdated and materially different photograph of Plaintiff – were necessary to the state courts' finding of probable cause.  When a warrant is allegedly based false statements or omissions, the Third Circuit applies a two-part test to determine if the warrant actually lacked probable cause: "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such

statements or omissions are material, or necessary, to the finding of probable cause." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks v. Delaware,* 438 U.S. 154, 171-72 (1978)).  As to the first prong, an assertion "is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Clapp*, 46 F.3d 795, 801 n. 6 (8th Cir. 1995)). The second prong requires a court to determine the materiality of the misstatements and omissions by "[excising] the offending inaccuracies and insert[ing] the facts recklessly omitted, and then determin[ing] whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* at 789.

The allegations in the Complaint meet this standard.  Compl. ¶¶ 27-28, 30, 33-35. Moreover, Defendants largely base their argument on information (Plaintiff's defense counsel's alleged admission as to the connection of Plaintiff to the phone numbers), Br. at 32, which the Court has found that it cannot consider at this stage.  Defendants also argue that Plaintiff's identification by two of the victims also adequately established probable cause, *id.*, but the Court has similarly found that Plaintiff's allegations are plausible as to the faulty photo array. Defendants' motion to dismiss Counts One and Two is denied.

### C.  Defendants' Motion to Dismiss Counts Four and Five

Defendant argues that Counts Four and Five, claims for failure to intervene and conspiracy, should be dismissed because Plaintiff has not pleaded an underlying constitutional violation.  Br. at 34-35.  As set forth above, the Court finds that Plaintiff has adequately asserted plausible constitutional violations.  Defendants' motion to dismiss Counts Four and Five is denied.

**D. Defendants' Motion to Dismiss all Claims Against Defendants' Cozentino and Arroyo**

Defendants argue that all claims against Cozentino and Arroyo should be dismissed because Plaintiff fails to adequately allege that those Defendants knew that Plaintiff was not connected to the case through the phone numbers and that the photo array used was misleading. Br. at 35. Plaintiff responds that the Complaint states allegations to create a plausible inference that Cozentino and Arroyo either gave "personal direction" or had "actual knowledge and acquiescence" of Graham's conduct to support a theory of supervisory liability. Opp. at 18-19 (citing *Widmaier v. City of Newark*, No. CV 16-2533, 2017 WL 2999022, at *3 (D.N.J. July 14, 2017)).

There are two cognizable theories of supervisory liability for Section 1983 claims. *Widmaier v. City of Newark*, No. CV 16-2533, 2019 WL 1895087, at *4 (D.N.J. Apr. 29, 2019). First, factual allegations that suggest "personal direction or of actual knowledge and acquiescence" may be sufficient to establish the necessary involvement for a supervisory liability claim. *Id.* "At least prior to *Iqbal*,[3] a plaintiff asserting such a supervisory liability claim must (1) identify a specific supervisory practice that the defendant failed to employ; (2) "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incident"; and (3) "circumstances under which the supervisor's inaction could be found to have communicated a message of approval." *Id.* (citing *Janowski v. Lellock*, 649 F. App'x 184, 187 (3d Cir. 2016)). Second, policymakers may be liable "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused the constitutional harm.'" *A.M. ex rel J.M.K. v. Luzerne Cty. Juvenile Detention*

---

[3] The precise scope of a Section 1983 supervisory liability claim after *Iqbal* is not settled within the Third Circuit. *See Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 70 (3d Cir. 2011). The parties have not addressed this issue.

*Ctr.*, 372 F.3d 572, 586 (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).  The second theory of liability is not at issue here.

The relevant allegation in the Complaint as to Arroyo and Cozentino is as follows:

> Defendants ARROYO and COZENTINO supervised, read, and approved Defendant GRAHAM's detective reports that contained verifiable falsehoods.  Defendants ARROYO and COZENTINO knew that Plaintiff could not be connected to any phone number associated with the offender and that the photo arrays were deceptive and misleading.   Defendants ARROYO and COZENTINO, who supervised Defendant GRAHAM, did nothing to intervene or stop Defendant GRAHAM's unconstitutional conduct despite knowing that it would lead to the wrongful arrest and prosecution of Plaintiff.

Compl. ¶ 37.

The Court finds this allegation insufficient to state a claim based on supervisory liability. The allegations are insufficient because Plaintiff fails to allege Arroyo and Cozentino's "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents" by Graham, Brown, and Mitti.  *See Widmaier*, No. CV 16-2533, 2019 WL 1895087, at *4.  In conclusory fashion, Plaintiff alleges that Arroyo and Cozentino read, supervised, and approved Graham's allegedly false reports.  *See* Compl. ¶ 37.  While this may be accurate, it does not indicate that Arroyo or Cozentino had knowledge of the allegedly false information.  Instead, Plaintiff alleges that Arroyo and Cozentino "knew" Plaintiff was not connected to the phone number and that Graham, Brown, and Mitti's photo arrays were suggestive.  But Plaintiff fails to allege sufficient facts from which the Court can infer that Arroyo and Cozentino had *contemporaneous knowledge* of these issues.  Plaintiff, for example, does not allege Arroyo and Cozentino knew that the photo of Plaintiff used in arrays was not an accurate depiction of Plaintiff's current appearance or that they knew the photo of Plaintiff used in the arrays was 15 years old.  Similarly, Plaintiff does not allege factual support for the basis of Arroyo or Cozentino's

17

knowledge that the perpetrator's phone number was not connected to Plaintiff at the time Graham made his reports.  Nor does Plaintiff allege that Graham, Brown, and Mitti acted similarly in the past.  Accordingly, Plaintiff has failed to allege sufficient facts establishing Arroyo and Cozentino had contemporaneous knowledge of Graham, Brown, and Mitti's alleged wrongdoing. Defendants' motion to dismiss the claims against Arroyo and Cozentino is granted without prejudice.

### E.  Defendants' Motion to Dismiss all Claims Against Defendant Graham

Defendants next argue that the Court should dismiss all claims against Defendant Graham because he is entitled to qualified immunity.  Br. at 37.  Defendants argue that "there are no well pleaded facts that support any interpretation that Defendant Graham could not have reasonably believed anything but that he had probable cause to seek to arrest Plaintiff for these robberies." *Id*.

Qualified immunity "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)).  Because qualified immunity protects government agents from suit, it "should be resolved as early as possible." *Id*. The inquiry into qualified immunity, however, is fact intensive.  Therefore, it is "generally ill-suited for resolution at the pleadings stage." *Janowski v. City of North Wildwood*, No. 16-4464, 2017 WL 1821078, at *4 (D.N.J. May 5, 2017) (quoting *Batiz v. Brown*, No. 12-581, 2013 WL 1137531, at *7 (D.N.J. Mar. 14, 2013)).  "[Q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas*, 463 F.3d at 291 (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

Defendants' assert that there are no well-pleaded facts to establish that it was unreasonable for Graham – or a reasonable officer in Graham's position – to believe that he had probable cause to arrest and pursue the prosecution of Plaintiff.  Br. at 37 (citing *Morillo v. Torres*, 117 A.3d 1206, 1215 (N.J. 2015)).  However, as described above, the Court does not consider the veracity of Plaintiff's criminal defense counsel's alleged admission that the phone number was associated with Plaintiff.  Moreover, Defendants' contention overlooks Plaintiff's allegations that (1) he had no connection to the offender's phone number, Compl. ¶ 27; (2) he did not match the description of the offender, *id*. ¶ 28; (3) he maintained no accounts on either Offerup or Craigslist, *id*. ¶¶ 28, 35; (4) that the assailant was not described as having an accent while Plaintiff spoke with a distinct Nigerian accent, *id*. ¶¶ 27, 48; (5) that the two victim identifications were the product of Graham, Mitti, Brown's improper tactic in using a fifteen-year-old photo of Plaintiff to fit the description of the assailant and falsely telling the victims the offender's phone was associated with Plaintiff, *id*. ¶¶ 30, 33; and (6) that Graham knew all of this, *see e.g., id*. ¶ 28.  The Court finds that no reasonable police officer with the knowledge of the foregoing allegations would have believed that there was probable cause to arrest and prosecute Plaintiff.  Accordingly, Defendants' motion to dismiss Plaintiff's claims against Graham on the ground of qualified immunity is denied.

### F.  Defendants' Motion to Dismiss Count Six Against Newark

Defendants raise two arguments to dismiss Count Six, a *Monell* claim against Newark. First, Defendants argue that the claim should be dismissed because Plaintiff failed to allege a predicate constitutional violation.  Br. at 39.  This argument is denied for the reasons discussed above.  Second, Defendants argue that "the Complaint contains no well-pleaded factual allegations that the city failed to employ corrective practices for any improper custom, and no well-pleaded factual allegations of an improper custom." *Id*. at 43.  Plaintiff, in response, points to its allegations

concerning the DOJ investigation and the consent decree as well as the other cases of alleged constitutional violations to show he has adequately pleaded his *Monell* claim.  *See id*. at 23.

A municipality or local governing body cannot be held liable under a theory of *respondeat superior* for a § 1983 claim.  *Monell v. Dept. of Social Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978). Instead, a municipality may be liable under § 1983 only "if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury."  *Jewell v. Ridley Township*, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting *Monell*, 436 U.S. at 694).  A policy exists "when a decision-maker with final authority issues an official proclamation, policy, or edict."  *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (internal quotations and citations omitted). "[A] custom may be established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  *Id*. (internal quotations and citations omitted).

Plaintiff's first theory of *Monell* liability is that, at the time of Plaintiff's arrest and prosecution, Newark "had a well-documented pattern and practice of condoning Fourth Amendment violations of civilians by its officers, including conduct that resulted in false arrests and malicious prosecutions of innocent people."  Compl. ¶ 83; *see also* Opp. at 21.  Plaintiff relies heavily on DOJ's 2011 investigation into the NPD, the report of investigation[4] that followed, and the consent decree reached between Newark and DOJ.  Plaintiff expressly relies on the DOJ Report in his Complaint and provided a link to the report as well.  *See* Compl. ¶ 84; *see also* id. at 17, n. 4.  Accordingly, the Court may consider the report at this stage, *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (stating that at motion to dismiss stage a court may rely on "a

---

[4] *See Investigation of Newark Police Department*, United States Department of Justice Civil Rights Division, United States Attorney's Office District of New Jersey (July 22, 2014) (hereinafter "DOJ Report").

document *integral to or explicitly relied* upon in the complaint." (emphasis in original) (citation

omitted)), *see also Rollins v. City of Newark*, No. CV 18-14473, 2020 WL 6194035, at *3 (D.N.J.

Oct. 22, 2020), *Widmaier v. City of Newark*, No. CV 16-2533, 2019 WL 1895087, at *3 (D.N.J.

Apr. 29, 2019).

      The most relevant aspects of the DOJ Report focus on officer's reporting practices.  Among

other things, the DOJ Report commented that "[a]lthough NPD officers generally write reports

that facially appear to establish probable cause to arrest, those reports have reflected two categories

of problematic practices."  DOJ Report at 11.  The DOJ Report continues that "there is reasonable

cause to believe that some number NPD narcotics arrest reports may not have accurately described

the circumstances leading to the arrest, and that the NPD has not addressed this problem."  *Id*. at

11.  DOJ found that, from a sample of 100 arrest reports, "[t]he overwhelming majority of . . .

narcotics arrests and associated incident reports contained remarkably similar language to support

officers' reasonable suspicion to stop the individual."  *Id*.  The DOJ observed that, among other

things, Newark police officers used the "plain view" exception to justify probable cause to arrest

despite the implausible application of that exception given the circumstances:  "In the 'plain view'

scenarios, individuals were purportedly seated in cars holding clear plastic baggies in front of them

or in their laps and officers could 'immediately' see the contraband, even through the report

indicated that the subject's back was to an officer, or that the officer had not yet approached the

car."  *Id*. at 15.  The DOJ concluded as follows:

> The prevalence of instances in which officers purportedly recovered
> drugs without the need for a search, together with the circumstances
> of those arrests as described by the reports, indicated that some
> portion of NPD arrest reports may have been inaccurate and that the
> NPD does not have the systems in place to reliably detect such
> deficient reports so that it can ensure that the underlying
> circumstances of the stop, search, and arrest are lawful.

*Id*. at 15-16.

The Court finds that the DOJ Report does not support a plausible inference that Newark had a policy or custom that was the moving force behind Plaintiff's alleged constitutional injury. On the one hand, both the DOJ Report and Complaint address problems with NPD's police reports. However, the focus of the DOJ Report, as to the NPD's police reports, was the apparently uncanny consistency among the NPD reports in drug arrests.  Here, Plaintiff does not claim that he was arrested for a drug offense or under circumstances akin to those noted in the DOJ Report.  As to other matters that have been filed against Newark, Plaintiff does not allege that any of the referenced cases resulted in a *judgment* against Newark as to the alleged *Monell* claims. Accordingly, the Court will not consider such allegations in support of Plaintiff's *Monell* claim. *Rollins*, No. CV 18-14473, 2020 WL 6194035, at *4 ("Plaintiff appears to rely solely on allegations, as no judgments were entered for the *Monell* claims asserted in any of these matters. The simple fact that *Monell* claims have been asserted against Newark in other cases does not support Plaintiff's *Monell* claim in this instance.").

Plaintiff also makes a conclusory allegation that Newark maintains "a formalized policy that precludes the use of live line-up identification procedures and/or any other confirmatory identification procedures."  *Id*. ¶ 99; *see also id*. ¶¶ 100-101.  This allegation is insufficient to establish a policy because Plaintiff fails to identify the "decision-maker with final authority" that officially established the policy.  *Rapeika*, No. CV 19-6612, 2020 WL 6391202, at *3 (citing *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015)).  Plaintiff's allegations also fail to indicate when this alleged official policy came into place and where the policy may be found. Plaintiff further fails to provide sufficient allegations to show that this policy "is so well-settled

and permanent as virtually to constitute law." *Id*.  Plaintiff only points to the use of a photo array in this case.

Plaintiff also asserts a "failure to supervise" claim against Newark for failing "to meaningfully investigate any cases in which Newark police officers have falsely arrested and recommended charging innocent persons with a serious crime[.]" Compl. ¶ 102.  Plaintiff further alleges that Newark failed to train its officers in a variety of areas. *Id*. ¶ 106.   A *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline.  To plead such a claim, a plaintiff must demonstrate that a city's failure "reflects a deliberate or conscious choice." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, 800 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)).  For claims involving police officers, the alleged failure can only serve as a basis for § 1983 liability where it "amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (explaining that a *Monell* claim that is "predicated on a failure or inadequacy has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality").  Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)).

The Court finds Plaintiff's failure to supervise and/or train claims, *see* Compl. ¶¶ 102-114, are not plausibly alleged.[5]   Plaintiff alleges that Newark has failed to "meaningfully investigate any cases in which Newark police officers have falsely arrested and recommended charging innocent persons with a serious crime and no Newark police officer has ever been disciplined as a result of his misconduct in any of those cases." *Id*. ¶ 102.  Plaintiff further alleges Newark "operated a dysfunctional disciplinary system" for police officers accused of serious misconduct and facilitated a "code of silence within the Newark Police Department" that allowed officers "to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences." *Id*. ¶¶ 103-105.  But the allegations are conclusory and lack sufficient factual support.

Similarly, Plaintiff's failure to train claim is conclusory.  Plaintiff alleges Newark police department failed to provide adequate training to police officers as to (1) "the constitutional requirement to disclose evidence," *id*. ¶ 106(a); (2) "[t]he need to refrain from manipulation or potentially coercive conduct in relation to witnesses," *id*. ¶ 106(b); (3) "how to assemble and administer a fair and constitutionally-sound photo array, and generally how to conduct proper and reliable identification procedures," *id*. ¶ 106(c); (4) "[t]he risks of wrongful conviction and the steps police officers should take to minimize risks," *id*. ¶ 106(d); (5) "[t]he risks of engaging in tunnel vision during investigation," *id*. ¶ 106(e); and (6) the "need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process[,]" *id*. ¶ 106(f).  However, in general, "to plead deliberate indifference, a plaintiff must allege, among other things, that there was a history of employees mishandling a particular situation." *Rapeika*, No. CV 19-6612, 2020 WL 6391202, at *4.  Here, Plaintiff fails to provide sufficient allegations that

---

[5] Plaintiff does not appear to rely on the DOJ Report as to the failure to supervise allegations.

there was a history of Newark police officers mishandling any of the situations above.  Instead, the allegations are again conclusory.  Accordingly, Defendants' motion to dismiss Count Six, Plaintiff's *Monell* claim against Newark, is granted without prejudice.

### G.  Punitive Damages

Defendant also moves to dismiss Plaintiff's punitive damages claim against Newark.  Br. at 47.  Plaintiff concedes that "[Newark] is not subject to punitive damages."  Opp. at 24.  Thus, Plaintiff's claim for punitive damages against Newark is dismissed with prejudice.

### IV.   CONCLUSION

For the reasons stated above, Defendants' motion is granted in part and denied in part.  An appropriate Order accompanies this Opinion.

Dated: March 19, 2021

John Michael Vazquez, U.S.D.J.